## SANTA FÉ PAC. R. CO. v. WORK, Secretary of the Interior.

(Court of Appeals of District of Columbia. Submitted December 6, 1923. Decided February 5, 1924.)

No. 3966.

1. **Public lands** ⬤⟾81(1)—**Railroad not entitled to select lieu lands containing coal deposits.**

Where a grant of land to aid in the construction of a railroad by Act July 27, 1866, provided that the grant should consist of public lands not mineral, with the proviso that the word "mineral" should not include coal and iron, *held*, that the grantee cannot, under Act June 22, 1874 (Comp. St. § 4889), permitting the selection of lieu lands not mineral, select lands known to contain coal deposits, especially in view of Act Feb. 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ss), providing that coal lands of the United States can only be disposed of by lease.

2. **Public lands** ⬤⟾81(1)—**What railroad may select in lieu of land relinquished depends on state of land selected at moment of choice.**

What a railroad may select in lieu of land granted to it, but relinquished under Act June 22, 1874, depends on the state of the land selected at the moment of choice, and land withdrawn from sale before the date of selection cannot be selected.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Sante Fé Pacific Railroad Company against Hubert Work, Secretary of the Interior. From a decree sustaining defendant's motion to dismiss, discharging a rule to show cause, and dismissing the bill, plaintiff appeals. Affirmed.

See, also, 50 App. D. C. 95, 267 Fed. 653; 50 App. D. C. 98, 267 Fed. 656.

F. W. Clements, of Washington, D. C., for appellant.

C. Edward Wright, of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and BARBER, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellant railway company, plaintiff below, filed its bill in the Supreme Court of the District of Columbia, praying an injunction to restrain defendant, the Secretary of the Interior, from canceling a selection of public land made by it in lieu of land relinquished from the original grant made by the government. From a decree sustaining defendant's motion to dismiss, discharging the rule to show cause, and dismissing plaintiff's bill, this appeal was taken.

[1] By the Act of July 27, 1866, 14 Stat. 292, a grant of land was made by the United States to aid in the construction of the Atlantic & Pacific Railroad, which has since passed into the ownership of the plaintiff railway company. The grant consisted of the odd-numbered sections within a territory extending 20 miles on either side of the railway tracks, known as the primary or place limits of the grant. The act provided for a right of indemnity within an enlarged limit, from which the railway company might select lands in lieu of lands that had

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

already been settled or disposed of within the place limits prior to the location of the line of railway. The grant consisted of "public lands not mineral" with the further provision "that the word 'mineral' when it occurs in this act shall not be held to include iron or coal." No provision was made for the taking of indemnity lands except in lieu of lands which had been settled upon or disposed of within the place limits prior to the definite location of the road.

By the Act of Congress of June 22, 1874, 18 Stat. 194 (Comp. St. § 4889) it was provided:

"That in the adjustment of all railroad land grants, whether made directly to any railroad company or to any state for railroad purposes, if any of the lands granted be found in the possession of an actual settler whose entry or filing has been allowed under the pre-emption or homestead laws of the United States subsequent to the time at which, by the decision of the land office, the right of said road was declared to have attached to such lands, the grantees, upon a proper relinquishment of the lands so entered or filed for, shall be entitled to select an equal quantity of other lands in lieu thereof from any of the public lands not mineral and within the limits of the grant not otherwise appropriated at the date of selection, to which they shall receive title the same as though originally granted. And any such entries or filings thus relieved from conflict may be perfected into complete title as if such lands had not been granted: Provided, that nothing herein contained shall in any manner be so construed as to enlarge or extend any grant to any such railroad or to extend to lands reserved in any land grant made for railroad purposes."

In the present case, the land which constitutes the base for the selection here in question was settled upon after the rights under the original grant had attached, and to protect the settler the railway company was requested by the Secretary of the Interior to relinquish the claim, as provided by the act of 1874, and select other lands in lieu thereof. The relinquishment by the railroad company was accepted by the Secretary of the Interior May 25, 1917, and the patent of the United States has passed to the settler.

The sole question in this case is the right of the railway company to select, in lieu of the land relinquished, lands known to be possessed of valuable coal deposits. It is the contention of plaintiff company that, inasmuch as the act of 1866 excepted from its mineral provisions iron or coal, the act of 1874, permitting the selection of lieu lands not mineral, is likewise to be interpreted as exempting from its mineral provisions iron or coal. We think this contention cannot be sustained, and that so far as the mineral limitation is concerned, the act of 1874 must be construed without reference to the original granting act. It deals with a situation not contemplated by or embraced within the provisions of the original act. No involuntary condition was forced upon the railway company. It merely provided that, in the event of settlement on the railway lands, the railway company might relinquish to the government in favor of the settler, and select, in lieu of the lands relinquished, lands equal in quantity and value. To this end, when Congress limited the lands open to selection to those nonmineral in character, it imposed no obligation or hardship upon the railway company, nor divested it of any right granted under the original act. The railway company was not obligated to relinquish its title to any land under the provisions of the 1874 act. It had the option to retain or relinquish.

If it relinquished, it could select any land not mineral within the exterior limits of the grant. It was not limited to odd-numbered sections, as in the case of indemnity lands under the original act. It in no way enlarged the original grant; indeed, that was expressly inhibited. It applied only to agricultural lands settled under the pre-emption or homestead laws. Such land could only be relinquished, and, under a reasonable interpretation, we think only such land could be taken in lieu thereof.

The act of 1874 was general in its terms. The term "not mineral" was not qualified by any provision as to coal or iron as in the original act. It applied to all railway grants, although in many of such grants the nonmineral provision was not qualified to the extent of exempting therefrom iron or coal. If we are to import the mineral limitations of the act of 1866 into the act of 1874, why not limit the right of selection under the latter act to odd-numbered sections. The act contains no such limitation, and indeed the selection in this instance is from an even-numbered section. We think, therefore, that to sustain the contention of plaintiff would be to enlarge the scope of the act, and read into it conditions not justified by the language of the act itself, or of the original act, or to be inferred from any intention manifested by Congress.

Counsel for appellant company lay stress upon the clause of the act of 1874 which provides that, as to lieu lands selected and approved, the railroad company "shall receive title the same as though originally granted." This refers merely to the kind of title and the avenue through which it shall pass, and does not relate to the quality of land to be selected, or invest the railroad company with any right of selection equivalent to that provided in the original grant. They are words of conveyance, not of power.

But plaintiff company is confronted by still another difficulty. The selection in question was not made until December 1, 1921. It was therefore preceded by the Act of February 25, 1920, 41 Stat. 437 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ss), which withdrew the coal lands of the United States from sale and provided that they could only be disposed of by lease. Certain lands were excepted from the provisions of the act, but the land here in question is not affected thereby. This particular land had been withdrawn under the act of 1920, and was not, therefore, subject to selection in December, 1921. The railway company in 1917, when it relinquished its title to the base land, acquired merely a right to select land in lieu thereof as provided in the act of 1874. The obligation assumed by the United States upon the relinquishment of the base land was only to give proper and available lieu land in exchange therefor.

[2] It must, however, be proper and available lieu land on the date of its selection, not necessarily of the date of relinquishment. "An indemnity grant, like the residuary clause in a will, contemplates the uncertain and looks to the future. What a railroad is to be indemnified for may be fixed as of the moment of the grant, but what it may elect when its right to indemnity is determined depends on the state of the lands selected at the moment of choice. Of course the railroad is limited in choosing by the terms of the indemnity grant, but the so-called

grant is rather to be described as a power. Ordinarily no color of title is gained until the power is exercised." United States v. Southern Pacific Railway, 223 U. S. 565, 570, 32 Sup. Ct. 326, 327 (56 L. Ed. 553).

Inasmuch, therefore, as the railway company made no claim to the land in question prior to the act of 1920, and since its right to indemnity "depends on the state of the lands selected at the moment of choice," it follows that plaintiff is foreclosed from selecting the lands in question both by the act of 1874 and the act of 1920.

The decree is affirmed, with costs.

Motion for allowance of appeal to Supreme Court of the United States granted February 16, 1924.